# UDALL | SHUMWAY
COUNSELORS AT LAW SINCE 1965

RIVERVIEW POINTE OFFICE PARK
1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5320 I Fax: 480.833.9392

Steven H. Everts - #004831
she@udallshumway.com
Attorneys for Respondent

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **AHMED ELKHAIAT,** | **CASE NO.: 2:24-cv-02800-SPL** |
| Petitioner, | **FIRST AMENDED RESPONSE TO VERIFIED PETITION FOR RETURN OF CHILD TO CANADA** |
| **NORA MAWASHI,** | |
| Respondent. | **(P/A Honorable Steven P. Logan)** |

Respondent, Nora Mawashi (hereinafter "Mother"), through counsel undersigned, hereby files her First Amended Response to the Verified Petition for Return of Child to Canada (hereinafter "Petition") filed by Petitioner, Ahmed Elkhaiat (hereinafter "Father"), and admits, denies, and alleges as follows:

## I.

## INTRODUCTION

1.      Mother denies the allegations of Paragraph 1 of Father's Petition regarding the alleged wrongful removal and habitual residence of the child. The "habitual residence" of the child is determined not only by the shared intention of the parents under *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001), and the child-centered approach, but most recently under the "totality of the circumstances test" as set forth by the United States Supreme Court in *Monasky v. Taglieri*, 140

S. Ct. 779 (2020). Mother further alleges that Father, Mother and the child were planning to move together to Arizona for the duration of Mother's Master's Degree schooling at Arizona State University (hereinafter "A.S.U.") and probably beyond completion of her schooling. Mother messaged Father and kept him apprised of where she and the child were living while they have been in Arizona.  Father further stated he would come help Mother and the child in Phoenix.

2.    Mother admits the allegations of Paragraph 2 of Father's Petition regarding his name, parentage and citizenship.

3.    Mother admits the allegations of Paragraph 3 of Father's Petition regarding her name, parentage and citizenship.

4.    Mother admits the allegations of Paragraph 4 of Father's Petition regarding the year the parties were married, and alleges that the date of the marriage was May 15, 2021.

5.    Mother admits the allegations of Paragraph 5 of Father's Petition regarding the child's birth in Arizona and dual citizenship in Canada and the United States.  Mother denies the allegations in Paragraph 5 of Father's Petition regarding habitual residence and wrongful removal.  Mother further alleges that the child has been present in Arizona for her first visit from her date of birth on 5/26/23 to 6/25/23, for her second visit from 3/11/24 to 4/19/24, and has resided in Arizona from 8/8/24 to present.

6.    Mother acknowledges the allegations of Paragraph 6 of Father's Petition where Father alleges he has brought his Petition under the Hague Convention and ICARA, but denies that the Hague Convention and ICARA are applicable because there is no wrongful removal or retention. Mother further alleges that Father is merely using the Hague Convention as a means of retaliation against Mother.  Mother further alleges that there was a family plan to move to Arizona as evidenced by communications between Mother and

Father.  On 6/5/24 Mother and Father had a discussion regarding daycare in Arizona for the child, including potential government subsidies for international students. Father acknowledged this conversation with a thumbs-up emoji and confirmed his awareness of the costs for daycare as compared between Arizona and Canada. On 7/18/24 Father said he would support Mother in Phoenix. On 8/5/24 Father asked Mother about reimbursement from Dignity Health Mercy Gilbert Medical Center. Mother communicated that if they did not receive reimbursement or an update within the month of August, she planned to visit Dignity Health Mercy Gilbert Medical Center in Gilbert, Arizona, in person to inquire about it herself. Father again acknowledged and "liked" the message via a thumbs-up emoji.

7.     Mother admits the allegations of Paragraph 7 of Father's Petition that the United States has ratified the Hague Convention, but alleges that it does not apply to this case where there has been no wrongful removal or retention.

8.     Mother admits the allegations of Paragraph 8 of Father's Petition with regard to the purposes of the Hague Convention and ICARA, but alleges that they are not applicable in this case where there has been no wrongful removal or retention of the child from Canada.

## II.

## JURISDICTION

9.     Mother admits the allegations of Paragraph 9 of Father's Petition regarding jurisdiction, but denies the wrongful removal and retention of the child and the relief requested.

10.     Mother admits the allegations of Paragraph 10 of Father's Petition that Mother and the child are currently located in Maricopa County, Arizona.

11.     Mother admits the allegations of Paragraph 11 of Father's Petition that his claims rely, in part, upon foreign law, but alleges she has not been provided sufficient knowledge or information to identify the same at this time.

1  Mother further provides notice that Mother's claims may similarly rely, in part,

2  upon foreign law.

3                                    III.

4                          **BACKGROUND FACTS**

5        12.    Mother admits the allegations of Paragraph 12 of Father's Petition

6  regarding his residences in Canada and Egypt.

7        13.    Mother admits the allegations of Paragraph 13 of Father's Petition

8  regarding her residence in Canada in approximately 1996 (at age 9) from Iraq.

9        14.    Mother admits the allegations of Paragraph 14 of Father's Petition

10  that Father and Mother met in Toronto, Ontario, Canada in the fall of 2016 and

11  resided and worked in the Toronto area.

12        15.    Mother admits the allegations of Paragraph 15 of Father's Petition

13  regarding her ownership of the condominium in downtown Toronto where she

14  resided until May 2021.  Mother further alleges that Father owns a property in

15  Cairo, Egypt.

16        16.    Mother admits the allegations of Paragraph 16 of Father's Petition

17  regarding the place and date of their marriage, and they continued to reside and

18  work in Toronto after the marriage. Mother further alleges that when they were

19  married they resided in Mother's family's unit in downtown Toronto.

20        17.    Mother admits the allegations of Paragraph 17 of Father's Petition

21  regarding the name and date of birth of the child.

22        18.    Mother admits the allegations of Paragraph 18 of Father's Petition

23  regarding Mother's and Father's work history in Toronto.  Mother further alleges

24  that she is on maternity leave which ended in November 2024 and that her

25  present employer has agreed to extend her leave until at least June 2025 to allow

26  Mother to complete her Master's Degree program at A.S.U.

27        19.    Mother admits the allegations of Paragraph 19 of Father's Petition

28  regarding her parent's ownership of property in Toronto, Canada, and Arizona

1  and their seasonal residence in Queen Creek, Arizona, and Owen Sound, Ontario.

2  Mother further alleges that Father's family owns multiple homes in Egypt as well

3  as a couple of summer homes in Sahel, Egypt.

4      20.    Mother denies the allegations of Paragraph 20 of Father's Petition

5  regarding taking advantage of support from her parents and alleges that her

6  parents are snowbirds and only stay in Arizona until the end of March or early

7  April. Mother further alleges it was mutually agreed with Father that the child

8  would be with Mother in Arizona.  Mother further alleges that the purpose of

9  coming to the United States was for the child to become a dual citizen of Canada

10  and the United States.

11      21.    Mother admits the allegations of Paragraph 21 of Father's Petition

12  regarding the location of the child's birth and alleges the child resided with

13  Mother in Chandler, Arizona, from 5/26/23 to 6/25/23.

14      22.    Mother denies the allegations of Paragraph 22 of Father's Petition

15  regarding wrongful removal of the child and reiterates the allegations in

16  Paragraphs 5, 6 and 21 above.

17      23.    Mother denies the allegations of Paragraph 23 of Father's Petition

18  and alleges that she previously shared her desire to pursue a Master's Decree,

19  specifically not an MBA, with Father since the parties met in the fall of 2016.

20  Mother reiterated this in October 2023 during her maternity leave to maximize

21  her time off.  Although Mother's background is in marketing and marketing

22  technology, she had decided that AI was the future.  Mother was initially

23  accepted into the MS in Information Systems Management (MS-ISM) at A.S.U.,

24  but switched and is pursuing an MSc in AI in business when it is launched. There

25  were several rounds of deadlines to apply for the different schools. The Master's

26  program was intended to better the family's economic situation for the long-term.

27      24.    Mother denies the allegations of Paragraph 24 of Father's Petition

28  and alleges that she began discussing with Father and applying for graduate

1    schools back in October 2023. One of those schools was A.S.U. The parties signed
2    a one-year lease because they had outgrown their residence at 405-400
3    Wellington Condo with the new baby, dog, and Father working remotely. They
4    had to sign a one-year lease because there was no short-term lease. The condo
5    was also up for sale. In the event the unit had sold, they would have had to vacate
6    the condo earlier.

7        25.    Mother denies the allegations of Paragraph 25 of Father's Petition
8    and alleges that she was accepted at A.S.U. in February 2024. About the same
9    time, she also applied to several other universities, but they were not as strong as
10   A.S.U.'s program. Mother communicated the schools and timeline to Father and
11   did not represent that she would remain in Toronto, Ontario. The parties also
12   were initially discussing moving to Arizona as it would be cheaper to live than
13   in Toronto and they could stay in Mother's parent's home in Arizona. It was also
14   much easier to find daycare for the child in Arizona than Toronto. Moreover, the
15   move would not have been a challenge for Father as his CIBC contract expired
16   by April 2024.    Initially, Mother and Father contacted a real estate agent to
17   explore the possibility of ending their lease agreement. At that time, Mother and
18   Father had already made plans and were moving forward to move to Arizona.
19   However, before the end of the call, and to Mother's surprise, Father spoke to
20   their real estate agent asking her to find a one-bedroom condo in downtown
21   Toronto with a water view. When Mother asked Father why he requested that
22   the realtor find a one-bedroom unit, he responded that he "didn't want to come
23   full-time and babysit Lily in Arizona while you go to school."

24       On 7/19/24 Mother and the child were in Owen Sound, Ontario, not within
25   the Greater Toronto Area (hereinafter "GTA"). On the same day, Father objected
26   to the child being taken outside of the GTA despite the fact that Mother and the
27   child were in Owen Sound, outside of the GTA. Additionally, Father was aware
28   of the planned trip to Arizona and did not object to the travel. Instead, his

1   objection focused solely on the child being taken out of the GTA, even though
2   Mother and the child were already outside of the GTA in Owen Sound at the
3   time. Father's failure to object to travel to Arizona, while objecting to traveling
4   outside the GTA to Owen Sound, confirms that the removal of the child from the
5   GTA was not "wrongful." Father was aware of Mother's relocation plans since
6   then and did not object until 7/19/24 and later lost his temper, expressed anger
7   and started verbal abuse.  On 7/23/24 Mother confirmed the agreed-upon plan
8   was for Mother and the child to go to Phoenix and Father would meet them there
9   or elsewhere.  On 9/1 and 9/2/24, Father threatened to accuse Mother of abducting
10  the child.

11      26.    Mother denies the allegations of Paragraph 26 of Father's Petition
12  and alleges that the consent referenced by Father was to be used in case Mother
13  needed it at the border, but it was determined that she did not need to use it.
14  Mother was in Arizona from 3/11/24-4/19/24. While Mother was in Arizona, she
15  was pregnant until she attended an appointment with her OB/GYN in Chandler,
16  Arizona, on 3/26/24.  It was then that the OB/GYN stressed that Mother needed
17  to have an emergency D&C.  Mother did not know she was going to miscarry
18  and require a D&C until her OB/GYN appointment.  As stated above, it was
19  intended to be used at the border, in case it was needed, to allow Mother to travel
20  to Arizona and return to Toronto after a 2-3 week stay.  Mother ended up staying
21  longer than the original timeframe stated in the consent, but it was unrelated to
22  the procedure of her recovery.  Mother spoke to Father who planned to come to
23  Arizona to support Mother.  Mother had the D&C procedure at Dignity Health
24  Mercy Gilbert Medical Center and ended up staying in Arizona longer for
25  recovery. While in recovery mode, Father was fighting with Mother verbally over
26  the phone on a regular basis.  In addition, Father was not overjoyed about the
27  pregnancy, instead he was shocked and embarrassed, refusing to tell his family.
28  When asked, Father stated "I'm embarrassed to share the news." Despite

1   Mother's encouragement, Father continued to withhold the news from his family
2   and did not inform them when Mother had a miscarriage shortly thereafter.
3   During her recovery Father started fighting and yelling at Mother for using his
4   AMEX card to pay for the D&C procedure.  Father refused to pay for Mother's
5   return ticket with the child to come back home to Toronto on 4/19/24. Also, as
6   stated above in Paragraph 18, Mother spoke to her employer who agreed to
7   extend her leave until at least June 2025 to allow her to complete her Master's
8   Degree program.

9       27.    Mother reaffirms the allegations in Paragraph 26 of Father's Petition
10  stated above regarding her recovery time, pregnancy in Arizona and return to
11  Toronto, Canada.

12      28.    Mother denies the allegations of Paragraph 28 of Father's Petition
13  and again reaffirms and realleges her statements in Paragraphs 23 and 25 above.
14  In addition, Father accepted the move to Arizona as they had obtained an F-2
15  visa for Father and him paying for the child's daycare registration.  Mother and
16  Father had agreed that Mother would stay until at least her Master's Degree
17  program ended. And if she were to get a great opportunity, the family would
18  stay in the U.S.  Father also agreed to come to the U.S. when he got a better
19  opportunity for work in the U.S. as he also had a Master's Degree which enabled
20  him to get a job in the U.S.  Father agreed to this, especially since his contract
21  finished at CIBC.

22      Father has been fully aware of the daycare registration because every time
23  a transaction was made on his card a notification pinged immediately on his
24  phone.  Father also promised to commit to paying the child's daycare in Arizona
25  while Mother paid her graduate school tuition.

26      Mother alleges that Father had agreed to the Arizona plan because the
27  parties sat down to discuss the pros and cons of the program many times.  Father
28  knew of Mother's decision to go to Arizona and consented to the relocation.

1   When Mother left in August 2024, she was surprised that Father ignored her for
2   a month and did not expect Father to retaliate as he did by threatening Mother
3   with child abduction and yelling and asking Mother to return their daughter just
4   because Mother did not go to Egypt with Father.  Mother did not go with Father
5   to Egypt because of the conflict and fighting between them.  Father threatened
6   Mother and wanted to legally separate, saying, "I am tired of you.  You go your
7   way, and I go my way."

8        29.    Mother denies the allegations of Paragraph 29 of Father's Petition
9   and alleges that she never asked for Father's consent to go to her family's home
10  in Owen Sound. Rather, Mother made it clear to Father she was going home for
11  two weeks for the child's vaccine appointment and for her to get some studying
12  done to prepare for her program at A.S.U.

13       30.    Mother denies the allegations of Paragraph 30 of Father's Petition
14  and alleges that in approximately February of 2024, Father learned that CIBC was
15  not going to renew his employment contract.   In February 2024, Mother
16  suggested that Mother and Father go to Egypt in February/March or May 2024.
17  Father booked a trip to Egypt in July without Mother's knowledge. CIBC's initial
18  plan was to offer him a six-month contract job, with the intention of converting
19  him to a full-time position. However, when Father was presented with a full-time
20  offer in early 2024, he declined and chose to pursue an extended contract instead
21  of full-time.  Therefore, he knew his contract was not going to be renewed for a
22  while.  Father and Mother discussed the importance of considering full-time
23  opportunities as they arose from CIBC, especially given the bleak economic
24  outlook and the fact they had a five-month-old child at the time.  When the
25  chance to convert to full-time arose, Father told Mother that he told his manager
26  he preferred a contract position because it paid more, particularly while Mother
27  was currently not working and on maternity leave. Mother was surprised when
28  Father revealed this to her as she believed they had a mutual understanding

1    given their priorities. Not surprisingly, CIBC did not extend Father's contract and
2    he is now unemployed.

3         31.    Mother denies the allegations of Paragraph 31 of Father's Petition
4    and alleges that there was no mutual frustration regarding Father's employment
5    with CIBC.  On 6/6/24 Father called Mother via Facetime video to talk to their
6    daughter. Father expressly stated to Mother, "I am tired of you. You go your way,
7    and I go my way." Father lost his temper, expressed anger and started verbal
8    abuse. He did this in front of their daughter and Mother's parents.  Father was
9    well aware he was on FaceTime Video.  He was yelling these words to Mother
10   even though Mother tried to calm Father down.  This was not the first time that
11   Father had mentioned separation to Mother. Since their daughter was born,
12   Father has threatened Mother with separation, divorce and even calling the
13   police.  Mother's parents who overheard what happened were distraught and
14   left speechless.  This was the first time they had witnessed Father's anger and
15   verbal abuse but did not get involved. They did not get involved, but Mother's
16   mother mentioned this was not the right time nor place to have the discussion in
17   the child's presence.

18        32.    Mother denies the allegations of Paragraph 32 of Father's Petition
19   and alleges that Mother did not call Father on 6/8/24.  Rather, Father called
20   Mother and she told him she needed some time apart without a specified date.
21   Father called via a FaceTime Video pretending to talk to their daughter, when he
22   was just trying to speak to Mother.  Mother told Father she was disappointed in
23   his lack of accountability, that his words held little weight, and she needed time
24   apart from him to think about the future, but he could talk to their daughter
25   whenever he wanted.

26        33.    Mother denies the allegations of Paragraph 33 of Father's Petition
27   and alleges that the parties went to Toronto to collect some belongings of Mother
28   and the child and return back to Owen Sound, Ontario.  Mother alleges that

1   returning to Ontario was not planned between her and Father. Father did not
2   fight for Mother and the child.  Instead, Father said that Mother was making a
3   terrible mistake and that he hoped she thought this through, Father wished
4   Mother all the happiness in life, and he was sorry that they got to this stage.

5       Mother, with the child, drove with her father from Owen Sound to Toronto
6   as Father and Mother do not have a car. Mother's father wanted to speak to Father
7   about the 6/6/24 separation to calm the situation and help resolve the issues.
8   Father was adamant about not having anyone getting involved in their
9   relationship. Father said in front of Mother's father and Mother's mother (who
10  joined virtually via FaceTime video) that Mother had PTSD according to their
11  marriage counselor, whom the parties saw briefly in September/October 2023.
12  Mother then proceeded to pack her and the child's belongings. Mother E-mailed
13  Michelle Rae, the RSW specialist, in hopes of getting clarification as to why Father
14  said that she was diagnosed with PTSD in her own words. Ms. Rae responded to
15  Mother and copied Father in the E-mail assuring Mother that under no
16  circumstances can she diagnose Mother with anything as she was not a medical
17  doctor or a psychologist. It was outside of her scope of practice and professional
18  skills and education. When Mother brought this up to Father, he denied saying
19  that she had PTSD, claiming that was not what he meant. This was not the first
20  time that Father falsely claimed that Mother had PTSD.

21      34.    Mother denies the allegations of Paragraph 34 of Father's Petition
22  and alleges that Father knew that Mother and the child would not be traveling to
23  Egypt with him after 6/15/24 when Mother went to Toronto to collect their
24  belongings. Father was also aware of the F-2 dependent visa that was filled out
25  and submitted back in May 2024. It was approved after the parties separated on
26  6/14/24.  Father also told Mother he changed his LinkedIn location to the U.S.
27  prior to their separation because he was applying for jobs in the United States.
28

1  Father also consulted Mother's younger brother who sent them a few links for
2  job opportunities and spoke to recruiters.

3      35.    Mother denies the allegations of Paragraph 35 of Father's Petition
4  and alleges that on 6/15/24 Father sent a text message where he stated that Mother
5  was making a terrible mistake, and he hoped she thought this through and he
6  wished Mother all the happiness in life.  Mother told Father he could visit the
7  child any time he wanted.  In addition, Father knew that Mother got admitted
8  both in February and again in May 2024.  There would have been no other reason
9  for filling out the I-20 application for the F-1 and F-2 visas.

10      36.    Mother denies the allegations of Paragraph 36 of Father's Petition
11  and alleges that Father called on 7/17/24, Mother reiterated that she was coming
12  the next day on 7/18/24 so that he could see their daughter just before he went on
13  his trip to Egypt.  Father knew that he was going alone to Egypt and that Mother
14  and their daughter would not be going with him.

15      On 7/18/24 the parties did not arrange to meet at the apartment.  Due to the
16  child's schedule, and discomfort with the long drive, the parties agreed to meet
17  at Victoria Park in downtown Toronto so Mother and the child could go back to
18  Owen Sound the same day.  Prior to this, Father never exercised his parenting
19  time rights.  Mother's parents drove Mother and the child from Owen Sound to
20  Toronto so Father could see their daughter.  He saw their child for an hour and a
21  half, although he spent most of that time yelling at Mother and verbally abusing
22  her in front of their daughter in public.  Father did not object to Mother returning
23  to Owen Sound the same day and stated he would support Mother in Phoenix
24  verbally and via text.  In the past, Father had used Uber and similar services to
25  come to Owen Sound from Toronto, once by himself and once with the dog.
26  Mother suggested finding alternative methods of coming to Owen Sound or meet
27  halfway and Father refused.  Father never took action to get a Canadian driver's
28  license until early 2024, although he took a course at a driving school but never

1   followed through with the exams.  He wanted to wait until he went to Egypt to
2   get his driver's license and then returned to Canada to have it translated and
3   accepted as a formal G2 Canadian license.  Upon information and belief, Father
4   still does not have a valid G2 Canadian driver's license.

5       37.    Mother denies the allegations of Paragraph 37 of Father's Petition
6   and alleges that she had been looking forward to their daughter meeting Father's
7   family, but Father made things worse instead of repairing their relationship.
8   Also, Father did not tell his family that Mother and their daughter were not going
9   to join him to come to Egypt until 7/18/24. Father did not tell them that the parties
10  were separated.  On the day of his flight, Father reached out to one of Mother's
11  aunts and confided to her that their relationship was rocky, putting the blame on
12  Mother and her family.  Although Father offered to come back early to work on
13  the party's relationship, he never did so.   He did not return until 8/10 or 8/11/24.

14      38.    Mother denies the allegations of Paragraph 38 of Father's Petition
15  and alleges that on 7/18/24 Father's mother intervened regarding the party's
16  relationship, eventually siding with Father and putting the blame on Mother.
17  Mother has a voice note from Father's mother to Mother's mother, sent on 8/3/24,
18  in which Father states that working on the marriage for just a few days prior to
19  Mother's departure to Arizona was insufficient. This was after Father knew
20  Mother was leaving, initially scheduled for 8/16/24. However, despite knowing
21  Mother's plans, Father and his family raised no objections. Mother originally
22  booked her flight to Arizona on 8/16/24, but due to her school orientation starting
23  earlier on 8/14/24, she rebooked her flight to 8/8/24. Mother also arranged for day
24  care for the child starting 8/12/24.

25      Father's mother and Mother's mother came to an agreement in early
26  August 2024 regarding Mother's departure for Arizona on 8/16/24 with the
27  expectation that Father would return early to work on the marriage relationship.
28  Instead, Father did not cut his trip short and came back on 8/10-11/24.   From

8/6/24 until 9/1/24 Father abandoned Mother and their daughter, cut off funds, did not provide for childcare, and did not respond to any of Mother's messages and calls. On 9/1 and 9/2/24 when Father finally contacted Mother, he lost his temper, expressed anger and started the verbal abuse again.

**IV.**

**RESPONSE TO WRONGFUL REMOVAL FROM**

**CANADA AND SUBSEQUENT EVENTS**

39.    Mother admits the allegations of Paragraph 39 of Father's Petition regarding the message she sent to Father via WhatsApp on 8/9/24, but alleges that Father was already in route to the airport on 8/10/24.

40.    Mother denies the allegations of Paragraph 40 of Father's Petition and alleges that Father knew that Mother had to go to Arizona for her Master's Degree program and that the child would accompany her.  Father was supposed to come and assist Mother and the child upon arrival but did not do so.  Also, on 5/26/24 Mother and the child were in Owen Sound, and not in Toronto. In addition, Father's claim about no verbal consent is false. There was verbal consent on 8/1/24 between both families and Father himself. He expressed no objection.

41.    Mother denies the allegations of Paragraph 41 of Father's Petition and alleges that on 8/1/24 the parties' mothers acknowledged and consented to Mother doing her Master's program at A.S.U. later that month.  Mother also denies Father's allegations regarding her parents because they had done nothing but helped the parties, including letting them live rent-free for almost three years which allowed Mother and Father to generate over $100,000 in savings to use as a down payment to buy a house.

42.    Mother denies the allegations of Paragraph 42 of Father's Petition and alleges that from 8/6/24 until 9/1/24 Father abandoned Mother and the child by not responding to any text messages, phone calls or even providing funds for their child.  On 9/2/24 Father told Mother he could legally crush her and stated he was

1  buying a ticket to come see Mother and their daughter. Father did not attempt to

2  see Mother and their daughter as Mother expected. Instead, Father filed a Hague

3  Convention case contrary to Father's allegations and actions. Mother continued

4  to advise Father of where she and the child were residing, her new U.S. telephone

5  number and the child's daycare locations.

6        43.    Mother denies the allegations of Paragraph 43 of Father's Petition and

7  alleges that Father did consent to Mother bringing the child to Arizona. Mother

8  also responded to the U.S. State Department notifying them she was open to their

9  mediation process.

10        Mother further alleges that after the legal proceedings started, Father started

11  getting in contact with her to exercise his parental rights for the first time since

12  7/18/24. Father initiated a FaceTime Video with the child on 10/26 and 10/27/24 as

13  well as 11/1, 11/2, 11/9 and 11/10/24 for approximately 15 minutes each day. On

14  10/28/24 Father reached out to the child's daycare in Queen Creek, Arizona,

15  requesting a letter from them to apply for childcare benefits and needed

16  confirmation that the child was enrolled in their school, attempting to commit

17  fraud, because Father stated he was applying for childcare benefits and needed a

18  letter from the preschool stating that the child was enrolled with Mother and

19  Father.

20        44.    Mother admits the allegations of Paragraph 44 of Father's Petition

21  regarding the letter from her lawyer and her intent to reside with their daughter

22  in Arizona, should the opportunity arise as initially discussed and agreed upon

23  for the benefit of the family. Mother further alleges that the letter included a

24  request for child support as Father blocked the funds for their daughter's

25  expenses.

26        45.    Mother admits the allegations in Paragraph 45 of Father's Petition

27  regarding a dissolution of marriage in Ontario, Canada, but denies the relief

28  requested.

46.    Mother denies the allegations of Paragraph 46 of Father's Petition and alleges that she has accepted the State Department's proposal for mediation and is waiting to be provided the information about what the process entails.

## V.

## RESPONSE TO CHILD'S CURRENT LOCATION

47.    Mother admits the allegations of Paragraph 47 of Father's Petition regarding her addresses and ownership.

48.    Mother admits the allegations of Paragraph 48 of Father's Petition regarding the temporary residence and ownership where Mother and the child were living, but alleges that they no longer reside there.

49.    Mother admits the allegations of Paragraph 49 of Father's Petition that the addresses listed are in Maricopa County, Arizona.

## VI.

## RESPONSE TO ADDITIONAL JURISDICTIONAL FACTS

50.    Mother admits the allegations of Paragraph 50 of Father's Petition regarding Father's parentage, but alleges that Father has not exercised many of his rights regarding the parties' child.

51.    Mother denies the allegations of Paragraph 51 of Father's Petition and alleges that Father did, in fact, consent to the child's move from Canada to Arizona in the United States.

52.    Mother admits the allegations of Paragraph 52 of Father's Petition regarding no other court orders, but alleges that Father has sought relief and obtained a court order in Canada, which Mother was served with on 10/30/24.

53.    Mother denies the allegations of Paragraph 53 of Father's Petition and alleges that Father abandoned his family ahead of his birthday and returned to Toronto to attend his birthday party.    Father left Mother to deal with the paperwork regarding the child's U.S. Passport.  Father also told Mother to take an Uber from Chandler, Arizona, to Tucson, Arizona, to get her passport for a day-

1  long trip with an infant less than a month old who had to spend the whole day in
2  Tucson in the peak of the heat.  Instead, one of Mother's brothers flew from New
3  Jersey to Chandler, Arizona, to drive Mother to get the child's U.S. Passport.

4      Mother further alleges that when there were significant events in their
5  family life, such as the loss of a second baby, Father promised to be present with
6  the family and assist Mother with the aftermath of the D&C procedure, as she
7  would not be able to carry anything heavy, such as their daughter, and Father
8  failed to even show up.

9      In addition, Mother alleges that Father did not spend significant time with
10 the baby to take care of her and often focused on his phone instead of engaging
11 fully with their daughter.   Father rarely engaged in activities that fostered
12 connection. Instead, he would briefly interact with their daughter before returning
13 to his phone. Even during outings when he took their daughter alone in the
14 stroller, he mostly ignored her in favor of his phone.  When the child cried or
15 fussed, Father did not respond properly, especially at night.  He would refuse to
16 get up when she cried and would not provide her milk bottle, believing that she
17 should be sleeping through the night by her age.  He suggested letting her "cry it
18 out."  Mother had to prioritize the child's well-being by herself, and Father spent
19 the majority of his time on his phone – waking up with it, sleeping with it, and
20 even using it while playing with the child.

21     Father has been absent from essential care-taking tasks such as changing
22 diapers, preparing meals, feeding the baby, bath times, taking her to medical
23 appointments, and taking her to baby classes for socialization with other babies
24 and development. Father did not know the child's schedule or preferences, often
25 arguing with Mother about nap times and sleep routines.  During arguments
26 Father was dismissive and created a disconnect in daily routines, making no effort
27 to engage. As a result, Father's presence with the baby is sporadic and inconsistent
28 and he fails to fully engage or show affection.

54.     Mother denies the allegations of Paragraph 54 of Father's Petition and alleges that she has never denied Father access to their daughter.  In fact, Mother tried every effort to get Father involved and engaged in the child's activities and general well-being, but Father decided to retaliate and ignored and abandoned Mother and the child. He did not pay for childcare and the child's well-being as promised. Rather, Mother alleges that Father is retaliating with legal issues because Mother and the child did not go to Egypt with him, even though he issued an informal separation on 6/6/24. Mother has asked Father to visit the child whether in Owen Sound or Arizona. Mother has tried to maintain open and constructive communication with Father without success.

Mother alleges that Father failed to fix the AMEX card situation to purchase a car seat for their daughter where Father alleged that the charges in Arizona were fraudulent and refused to correct the situation.  Mother also tried to use the credit card to pay for daycare expenses, but it was declined due to suspected fraud, leading to reimbursement to Father.  Mother attempted to pay for September childcare tuition using the AMEX card but was unsuccessful.

55.     Mother denies the allegations of Paragraph 55 of Father's Petition on the grounds she did not wrongfully remove or retain the child.  Mother further alleges that Father knew she would be in school undertaking her Master's Degree program at A.S.U. and had consented verbally, via text message, and his family knew and consented.  Father also paid for the child's childcare registration fee in Arizona, and his F-2 dependent visa was approved for him to accompany Mother and the child, etc.  Mother has kept Father apprised of where they were the whole time they have been in Arizona, including a change from her Canadian telephone number to a U.S. telephone number.  Father chose not to exercise his parental rights until the legal proceedings started.

56.     Mother denies the allegations of Paragraph 56 of Father's Petition as stated in Paragraphs 53, 54 and other Paragraphs stated above.  Mother further

1  alleges that in the video at their daughter's seven-month-old photo shoot on New
2  Year's Eve, Father refused to help Mother and the child because he did not like her
3  dress and claimed he was not a clown to make her laugh or play.

4      57.    Mother denies the allegations of Paragraph 57 of Father's Petition and
5  realleges those allegations in Paragraph 55 and other Paragraphs stated above.

6      58.    Mother denies the allegations of Paragraph 58 of Father's Petition and
7  realleges those allegations in Paragraph 55 and other Paragraphs stated above.

8      59.    Mother denies the allegations of Paragraph 59 of Father's Petition and
9  alleges that Father had numerous chances to join his family in Arizona as initially
10 planned and agreed. Nor did Father choose to actively communicate with Mother.
11 However, Father chose to attempt legal remedies which are wasteful and
12 expensive that would not benefit their daughter.

13     60.    Mother admits the allegations of Paragraph 60 of Father's Petition
14 that his Petition has been filed in less than one year from the date of Mother and
15 the child's move to Arizona, but alleges that there was no wrongful removal from
16 Canada and/or retention in the United States.

17                                    **VII.**

18         **RESPONSE TO COUNT I/ARTICLE 18/§ 9003 RETURN**

19     61.    In response to Paragraph 61 of Father's Petition, Mother restates all
20 prior admissions, denials and allegations as previously set forth herein.

21     62.    Mother admits the allegations of Paragraph 62 of Father's Petition
22 regarding concurrent original jurisdiction arising under the Hague Convention,
23 but denies the relief requested.

24     63.    Mother admits the allegations of Paragraph 63 of Father's Petition,
25 regarding the relief sought, but denies that the relief requested is justified.

26     64.    Mother denies the allegations of Paragraph 64 of Father's Petition
27 regarding a prima facia case and standard of proof and realleges those allegations
28 in Paragraph 55 and other Paragraphs above.  Mother alleges that instead of

1    joining the family in Arizona as initially agreed, Father changed his mind and

2    started using the Hague Convention Petition in retaliation against Mother and is

3    trying to legally crush Mother as he specified in the 9/2/24 telephone call.

4        65.    Mother acknowledges Father's requests as stated in Paragraph 65 of

5    Father's Petition, but denies the relief requested.   Mother further alleges that

6    Father is fully aware that Mother is enrolled in her Master's Degree program until

7    May 2025.

8        66.    Mother has insufficient knowledge upon which to form a belief as to

9    the truth or falsity of the allegations in Paragraph 66 of Father's Petition regarding

10   fees and costs, and, therefore, denies the same at this time.  Moreover, Father did

11   not choose to mediate with Mother, but immediately retaliated by filing legal

12   proceedings. However, Mother alleges that she has incurred unnecessary

13   attorneys' fees, costs, and expenses resulting from Father's Petition in this matter.

14   Therefore, Mother requests an award of attorney's fees, costs and other expenses

15   permitted by law to be paid by Father.

16       67.    Mother has insufficient knowledge upon which to form a belief as to

17   the truth or falsity of the allegations in Paragraph 67 of Father's Petition regarding

18   further fees and costs and, therefore, denies the same at this time. Mother

19   affirmatively denies that she has not wrongfully removed or retained the child in

20   Arizona.

21       68.    Mother denies the allegations of Paragraph 68 of Father's Petition

22   regarding an award of fees and costs and alleges that she is currently a full-time

23   student and full-time Mother covering all expenses regarding the parties'

24   daughter while Father continues to neglect the child and his family.  As a result,

25   Mother requests an award of attorney's fees, expense costs, travel costs, and other

26   applicable fees and costs from Father in connection with his Petition.

27

28

# VIII.

## RESPONSE TO COUNT TWO/PROVISIONAL REMEDIES

69.    In response to Paragraph 69 of Father's Petition, Mother restates all of her prior admissions, denials and allegations as previously set forth herein.

70.    Mother acknowledges the provisions of 22 U.S.C. § 9004(a), but denies the relief requested in Paragraph 70 of Father's Petition.

71.    Mother denies the allegations of Paragraph 71 of Father's Petition and alleges that Father has not been deprived of access to the parties' daughter. Mother requested that Father accompany Mother and the child to Arizona as a family unit as originally agreed.  It was Father that changed his mind as Mother did not go to Egypt with him on 7/20/24. Father has been receiving photos/video updates and having FaceTime video calls on the weekends. Father has also been planning a visit to Arizona in the near future.

72.    Mother denies the allegations of Paragraph 72 of Father's Petition regarding potential harm to the child and alleges that she has not concealed the whereabouts of the parties' child and has expressed a willingness to attend mediation with the U.S. State Department. In addition, Father has full access to the child via FaceTime video, weekend visits, and receiving photos/video updates. Father has been kept apprised of Mother and the child's whereabouts the entire time they have been in Arizona.

73.    Mother denies the allegations of Paragraph 73 of Father's Petition regarding questionable addresses and alleges that Father knows Mother's exact address at 22803 East Stacey Road, Queen Creek, Arizona 85142 from text messages between the parties.

74.    Mother denies the allegations of Paragraph 74 of Father's Petition and alleges that Father knows exactly where Mother and the child reside.  In fact, Mother was served with Father's pleadings at the same address stated above.

1  Father even contacted the child's daycare to confirm the address and asked them

2  for a letter to apply for childcare benefits.

3      75.    Mother denies the allegations of Paragraph 75 of Father's Petition and

4  specifically any Order for immediate relief regarding the child until such time as

5  an evidentiary hearing is held where Mother's evidence, defenses and arguments

6  may be heard, and a final determination is made regarding Father's Petition and

7  the situs of the litigation.

8  **IX.**

9  **RESPONSE TO STATE LAW COMPLIANCE**

10      76.    Mother admits the allegations of Paragraph 76 of Father's Petition and

11  alleges that there are no applicable requirements of state law that have not been

12  satisfied.

13      77.    Mother admits that Arizona has adopted the Uniform Child Custody

14  Jurisdiction and Enforcement Act (hereinafter "UCCJA"), but alleges that it does

15  not govern this international child custody dispute.  Rather, A.R.S. § 25-1040

16  applies to "a child custody proceeding in this state" and there is no such

17  proceeding pending in the State of Arizona at this time as defined by A.R.S. § 25-

18  1002(4).  Nor is there an order issued in a "child custody proceeding" pending in

19  Canada.

20      78.    Mother denies the allegations of Paragraph 78 of Father's Petition

21  and, as stated above, alleges that A.R.S. § 25-1040 applies to "a child custody

22  proceeding in this state" and there is no such proceeding pending in the State of

23  Arizona at this time as defined by A.R.S. § 25-1002(4).  Nor is there an order issued

24  in a "child custody proceeding" pending in Canada.

25      79.    Mother denies the allegations of Paragraph 79 of Father's Petition as

26  stated above and alleges that there is no "order for the return of the child made

27  under the Hague convention on the civil aspects of international child abduction"

28  in this or any other case as required under A.R.S. § 25-1052.

1    80.    Mother admits the allegations of Paragraph 80 of Father's Petition

2 that she and the child are currently located in Maricopa County, Arizona.

3    81.    Mother admits the allegations of Paragraph 81 of Father's Petition

4 regarding parentage of both Mother and Father.

5    82.    Mother admits the allegations of Paragraph 82 of Father's Petition

6 that she is not aware of any proceeding concerning the child except Father's

7 Petition and his Application filed in Canada, has insufficient knowledge on which

8 to form a belief as to the truth or falsity of the allegations regarding other

9 jurisdictions, and denies the relief requested by Father.

10    83.    Mother admits the allegations of Paragraph 83 of Father's Petition

11 with regard to no other persons claiming rights of custody or access to the child,

12 but denies the relief requested therein.

13    84.    Mother admits the allegations of Paragraph 84 of Father's Petition

14 regarding the requirement to be given notice with regard to any hearings

15 regarding the child.

16                                              **X.**

17                          **AFFIRMATIVE DEFENSES**

18    85.    As and for affirmative defenses, Mother alleges, in addition to all of

19 the above, that Father consented to and/or acquiesced in the removal or retention

20 of the child from Canada to Arizona.

21    86.    As for an additional affirmative defense, Mother alleges grave risk in

22 that the return of the Child would expose her and/or Mother to physical or

23 psychological harm or otherwise place the child in an intolerable situation.

24 Specific incidents which support this defense, include, but are not limited to, the

25 following:

26          •    On 12/24/23 Father blamed Mother for the problems in the

27 relationship, claimed Mother had PTSD, falsely relying on an alleged diagnosis by

28

23

1   Mother's RSW specialist, and threatened divorce to create financial instability and
2   emotional turmoil.

3   •   On 12/30/23 Father displayed aggression, slammed the door
4   and punched the wall, a clear attempt of intimidation to make Mother feel unsafe.

5   •   On 1/2/24 Father threatened physical violence against Mother
6   stating that he would "take matters into my own hands" and "slap you in the face
7   in front of your family." He also punched the wall as a means of intimidation and
8   control.

9   •   On 1/14/24 Father called Mother a "hypocrite" and accused her
10  of being vindictive.

11  •   On 4/2/24 Father questioned Mother's financial activities,
12  demanding to know what she did with the child's benefits and accused Mother of
13  being irresponsible. He said he did not trust Mother, wanted to monitor her
14  spending and Mother should stop using his money. He also committed sexual
15  intimidation and dehumanization by threatening to bring home an 18-year-old
16  and engage in sexual activities, which they could not discuss.

17  •   On 5/25/24 Father again called Mother a hypocrite, said he
18  would support her in Arizona, but then belittled her. He told Mother he was done
19  with her and slammed the door.

20  •   On 6/6/24 Father told Mother he was tired of her, "you go your
21  way, and I go my way." He followed by completely disregarding the financial and
22  other well-being of their daughter and has not provided a safe or healthy
23  environment for her.

24  •   On 9/2/24 Father told Mother he would "legally crush" her.

25  **XI.**

26  **RELIEF REQUESTED BY MOTHER**

27  Pursuant to the above, Mother requests the following relief against Father
28  in connection with this case:

24

1.    Father's Verified Petition for Return of Child to Canada be dismissed;

2.    The relief requested in Father's Verified Petition for Return of Child to Canada be denied;

3.    The Court deny Father's request for an immediate Order to Show Cause hearing;

4.    No Order be issued directing the United States Marshall's Service to locate and serve Mother any necessary papers as service of process has already been accomplished;

5.    Deny Father's request for an Order to return the child to Canada into Father's care;

6.    Based upon the facts and circumstances stated herein, Father's request for an award of attorney's fees, expenses and costs be denied;

7.    The Court enter a finding and appropriate Orders that Canada is not the habitual residence of the child;

8.    The Court enter a finding with appropriate Orders that Father has consented and/or acquiesced in allowing the child to reside with Mother in the United States;

9.    The Court enter a finding with appropriate Orders that there is a grave risk that a return of the child to Father would expose the child and/or Mother to physical or psychological harm or otherwise place the child and/or Mother in an intolerable situation;

10.    Mother be awarded her reasonable attorney's fees, costs, and other expenses in connection with these proceedings; and

11.    For such other and further relief as to the court seems just and proper under the circumstances of this case.

Dated this 10th day of January, 2025.

/ / /

1  / / /

2                                    UDALL SHUMWAY PLC

3

4                              By /s/Steven H. Everts
                                  Steven H. Everts
5                                  1138 N. Alma School Road, Suite 101
6                                  Mesa, Arizona 85201
7                                  Attorneys for Respondent/Mother

8

9

10                            **CERTIFICATE OF SERVICE**

11      I hereby certify that on January 10th, 2025, I electronically filed this

12   document using ECF for filing and transmitted the document through ECF to the

13   following registered ECF users:

14   Via E-mail to:

15

16
     Markus Risinger
17   WOODNICK LAW, PPLC
18   markus@woodnicklaw.com

19

20

21   /s/ Stefanie K. Barker
22   11831219.1\December 31, 2024\122648.1

23

24

25

26

27

28

1

**VERIFICATION**

2   STATE OF ARIZONA      )
                          ) ss
3   County of Maricopa    )

4        Nora Mawashi, being first duly sworn upon her oath, deposes and says:

5        That she is the Respondent named in the above and foregoing action; that

6   she has read the foregoing First Amended Response to Verified Petition for

7   Return of Child to Canada, knows and understands the contents thereof, and that

8   all of the matters stated therein are true to the best of her knowledge and

9   information, except those matters stated therein upon information and belief, and

10  as to those matters, she believes them to be true.

11

12

13                                                    _____
                                                      Nora Mawashi

14

15       SUBSCRIBED AND SWORN to before me, a Notary Public, this 6th

16  _____ day of ~~December~~ January 5, 2024 2025, by Nora Mawashi.

17                                                    _____
                                                      Notary Public

18

19

20

21

22

23

24

25

26

27

28